UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY ARTEAGA,

      Plaintiff,

    v.

SUSAN HUBBARD, et al.,

      Defendants.

Case No. 15-cv-03950 NC (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 58

Plaintiff Anthony Arteaga, a California state prisoner proceeding *pro se*, filed a civil rights complaint under 42 U.S.C. § 1983, alleging that Defendants violated his right to due process, and violated the unconstitutional conditions doctrine. The Court exercised supplemental jurisdiction over Plaintiff's state law claim. Defendants have filed a motion for summary judgment. Plaintiff has filed an opposition, and Defendants have filed a reply. For the reasons stated below, the Court GRANTS Defendants' motion for summary judgment.

**BACKGROUND**

The following facts are taken in the light most favorable to Plaintiff, and are undisputed unless otherwise indicated.

In October 2012, the California Department of Corrections and Rehabilitation ("CDCR") implemented a "Security Threat Group Prevention, Identification, and Management" ("STG") pilot program. Butler Decl. ¶ 5. The STG pilot program changed the CDCR's gang management policy from a "status-based" model to a "behavior-based" model that focused less on the labelling of an inmate as a gang member or associate, and more on that inmate's behavior. Giubino Decl. ¶ 5. That is, once an inmate was identified and validated as a gang member or associate, this identification no longer automatically resulted in a Secured Housing Unit ("SHU") placement. *Id.*

Another significant change implemented by the STG pilot program was the process through which inmates who had been validated as gang members or associates could earn their way from segregated housing back to the general population. Adams Decl. ¶ 3. This "step down program" ("SDP") was an alternative procedure for inmates to disassociate from gang activity and earn incremental privileges without debriefing.[1] *Id.* Prior to the STG pilot program, a validated prison member or associate was housed to an indeterminate term in the SHU for a minimum of six years. Giurbino Decl. ¶ 7. The SDP was an incentive-based, multi-step process, designed to be completed in five steps within three to four years. Ducart Decl. ¶ 4. It was intended to provide specific steps for inmates to demonstrate their ability to refrain from prison gang behavior, and prepare them for return to general population and eventual release to the community. *Id.*

---

[1] Debriefing is the process by which an STG inmate is interviewed by a prison official to provide the prison with information about a specific STG's structure, activities, and affiliates. Giurbino Decl., Ex. A at 56. It is a two-phased voluntary process by which an STG inmate agrees to disassociate himself from the STG and discontinue STG activities. *Id.*

Case No. 15-cv-03950 NC (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2

Steps 1 and 2 placed STG inmates in the SHU mainly for observation in order to segregate and monitor their behavior. Giurbino Decl. ¶ 8. STG inmates in Steps 1 and 2 were inmates who were deemed to present the greatest threat to others and to institutional security. *Id.* These two steps were designed to be completed within a total of 24 months, but inmates could accelerate to the next step earlier if they met the program requirements. *Id.* Most of the program requirements could be completed within the inmate's cells. *Id.* Some components of Steps 1 and 2 were reading comprehension testing, and skill-based programming like self-directed journals.[2] *Id.*

Steps 3 and 4 were reintegration steps once inmates completed Steps 1 and 2. *Id.* ¶ 9. These steps began reintegration with other inmates within the SDP by offering program and privilege incentives while still being housed in segregation. *Id.* Step 3 continued education and skill-based programming components such as anger management, parenting, and violence prevention programs. *Id.* Step 4 included further education and skill-based programming, twelve-step self-help programs, and STG-diversion programs. *Id.* After an inmate successfully completed all four steps, Step 5 included eligibility for transfer into general population and a twelve-month observation period. *Id.* ¶ 10.

Plaintiff was originally validated as an associate of the Mexican Mafia ("EME") prison gang in 2002. Hubbard Decl., Ex. A. Plaintiff was again validated as an active associate of the EME on January 12, 2012. *Id.* On August 26, 2013, Plaintiff received notice of his upcoming hearing before the Departmental Review Board ("DRB") for determination of whether Plaintiff should be considered for, and placed into, the STG pilot program. *Id.* ¶ 7. The notice included a copy of the STG handbook and evidence

---

[2] The Court notes that the Instructional Memorandum describing the STG pilot program indicates that participation in the self-directed journals is a component of Step 3 rather than Steps 1 and 2. Giurbino Decl., Ex. A at 45.

regarding Plaintiff's gang-related behavior for the previous four years.  *Id.*  At this time,

Plaintiff was housed in California State Prison – Corcoran in the SHU.  Adams Decl. ¶ 5.

On September 24, 2013, while house at California State Prison – Corcoran, Plaintiff

appeared before the DRB.  Hubbard Decl. ¶¶ 5, 8 and Ex. A.  At the hearing, the DRB

decided to place Plaintiff into Step 1 of the SDP.  *Id.*, Ex. A.  Plaintiff disagreed with the

placement.  *Id.*  Plaintiff informed the DRB that he would refuse to participate in the SDP,

and that he could not be forced to participate.  Thereafter, Plaintiff was transferred to

Pelican Bay State Prison ("PBSP") SHU.  Hubbard Decl. ¶ 8.

On January 29, 2014, Plaintiff was given an SDP Orientation to "Brave Series Step

1" self-directed journaling program, and was issued the first journal, along with a

"Readiness to Change" form.  Nealy Decl., Ex. A.  The "Brave Series" is a "self-directed

journaling program for inmates housed in a SHU, and in Steps 1 and 2 of the SDP."  *Id.*

"The journaling program is a weekly interactive journaling program, designed to help

inmates develop a system of new values and strategies that lead to responsible thinking and

behavior.  Inmates who wish to participate are provided with a new journal, along with a

"Readiness to Change" Form (self assessment forms) to be completed by the inmate

weekly."  *Id.*  Plaintiff was told that he was not required to complete the journaling

assignments, but that the failure to do so may result in Plaintiff's retention in Step 1 or 2.

*Id.*

While in PBSP SHU, Plaintiff successfully completed Steps 1 and 2 of the SDP,

including the requirement of completing interactive self-journaling.  Ducart Decl. ¶¶ 6-7

and Exs. A, B.  Specifically, on March 17, 2014, Plaintiff successfully transitioned to Step

2.  Nealy Decl., Ex. C.  Then on November 12, 2014, Plaintiff appeared before the Initial

Classification Committee, who noted that Plaintiff had successfully completed Step 2, and

recommended transferring Plaintiff to California Correctional Institute – Tehachapi or

Case No. 15-cv-03950 NC (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4

United States District Court
Northern District of California

California State Prison – Corcoran.  Ducart Decl. ¶ 7, Ex. B.

In January 2016, Plaintiff appeared before the DRB for a determination of whether Plaintiff could be transferred from the SHU to general population.  *Id.* ¶ 10.  Plaintiff was ultimately transferred to PBSP's Restricted Custody General Population Unit based on concerns for Plaintiff's safety.  *Id.* and Ex. C.

Plaintiff has filed a federal civil rights complaint alleging that Defendants violated his right to due process when they required him to undergo "cognitive behavioral therapy," which includes participating in the interactive journaling component of the SDP.  He also claims that Defendants violated the unconstitutional conditions doctrine, and raises a state law claim.

## DISCUSSION

A.    Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.*  The burden then shifts to

the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

C.    Analysis

Defendants move for summary judgment, arguing that: (1) Plaintiff was not denied due process; (2) Defendants are entitled to qualified immunity; (3) Plaintiff's request for injunctive relief should be denied as moot; (4) Defendants did not violate the unconstitutional conditions doctrine; (5) Plaintiff's state law claim should be dismissed for failing to comply with the California Tort Claims Act; and (6) the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim. The Court addresses each argument below.

1.    Due process

a.    Procedural due process

Interests that are procedurally protected by the Due Process Clause may arise from two sources – the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones

Case No. 15-cv-03950 NC (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

6

pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). A state may not impose such changes without complying with minimum requirements of procedural due process. *See id.* at 484.

Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *See id.* at 477-87.

A court presented with a procedural due process claim by a prisoner should first ask whether the alleged deprivation is one so severe that it implicates the Due Process Clause itself or one less severe that implicates an interest created by state statute or regulation. If it implicates neither, no procedural due process claim is stated. If it implicates the Clause itself, the court must determine what process is due. If the deprivation implicates an interest created by state statute or regulation, the court must next ask whether the applicable state statute or regulation narrowly restricts the power of prison officials to impose the deprivation. *Bonin v. Calderon*, 77 F.3d 1155, 1161-62 (9th Cir. 1996) (looking first to statutory language and finding no state created constitutionally protected interest in choosing method of execution because state statute does not guarantee prisoner choice). Next, the court must ask whether the deprivation is one of "real substance." *See, e.g.*, *Jones v. Moran*, 900 F. Supp. 1267, 1273-74 (N.D. Cal. 1995) (Wilken, J.). Only if

Case No. 15-cv-03950 NC (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

7

the answer to both questions is yes, must the court then determine what process is due.

The first question here, then, is whether Plaintiff has been deprived of a liberty interest implicated by the Due Process Clause itself. Here, it is important to clarify of what liberty interest Plaintiff alleges he was deprived. Plaintiff does not claim that his initial placement into the SHU based on his gang validation was without due process. *See Wilkinson v. Austin*, 545 U.S. 209, 228-29, (2005) (notice and opportunity to be heard are adequate procedural safeguards for placement in maximum custody); *Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003) (prison officials must provide an inmate facing gang validation with notice of the charges and an opportunity to present his views, and decision must be supported by "some evidence" with sufficient indicia of reliability). Nor does Plaintiff claim that the decision to place him into the SDP was without due process. Opp. at 2.

Plaintiff's claim is that he was denied due process when he was not permitted to refuse unwanted mental health treatment, i.e., the "cognitive behavioral therapy," which was a component of the SDP. Within the challenged "mental health treatment," Plaintiff includes the SDP requirements of completing workbooks, participating in the interactive journals and therapy, and insists that the mental health treatment component should require the involvement of medical professionals because it constitutes a form of psychotherapy. Opp. at 1.

In *Vitek v. Jones*, 445 U.S. 480 (1980), the Supreme Court held that the classification of inmates as "mentally ill" without a hearing, plus the physical transfer of these inmates to a mental hospital implicated the inmates' liberty interest. *Id.* at 487-88. "[T]he stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty

that requires procedural protections." *Id.* at 494.

In *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), the Ninth Circuit analyzed *Vitek* and applied its analysis to a case about sex offenders. *Neal* concluded that the classification of inmates as sex offenders who had not been convicted of a sex offense and had not had a hearing, coupled with a requirement that those inmates complete a mandatory treatment program as a precondition to parole eligibility implicated a liberty interest. *Id.* at 828-29.

Here, despite Plaintiff's initial allegations, he concedes that he in fact, was not labelled or classified as "mentally ill." In *Neal*, the liberty interest was implicated by both the labelling of inmates as sex offenders, which results in "stigmatizing consequences," without a hearing, plus the mandatory treatment as a precondition to parole eligibility. The Ninth Circuit emphasized that if the inmates' challenge was only to the mandatory treatment, "we could probably not say that a liberty interest had been created, given the fact that prisons frequently maintain treatment and behavioral modification programs (such as anger management or alcohol abuse classes) that have long withstood legal challenge." *Id.* at 830. Plaintiff's situation is more akin to this latter hypothetical challenge solely to the mandatory treatment, which the Ninth Circuit stated did not rise to the level of a liberty interest.[3] Moreover, Plaintiff's "mandatory treatment," was not a precondition to parole eligibility, as in *Neal*, but was one avenue in which Plaintiff could be released from the SHU.

Accordingly, the Court finds that Plaintiff did not have a liberty interest implicated by the Due Process Clause itself. *See, e.g.*, *Knowlin v. Heise*, No. 10-3288, 2011 WL 1625432, at **2-**3 (7th Cir. Apr. 29, 2011) (unpublished memorandum disposition)

---

[3] To the extent Plaintiff alleges that his labelling as an STG associate was a similar "stigmatizing consequence," that argument is without merit.

Case No. 15-cv-03950 NC (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

9

United States District Court
Northern District of California

(concluding that inmate failed to demonstrate a deprivation of a protected liberty interest when prison required participation in substance abuse treatment program even though inmate was not classified as substance-dependent); *Bracey v. Beard*, No. 11-217, 2014 WL 4659639, at *8 (W.D. Pa. Sept. 17, 2014) (finding no implication of liberty interest in placement of non-mentally ill inmates into Special Modification Unit or forced behavior modification program because "inmates are not forced to undergo any treatment but that the program merely attempts to . . . motivate them to modify the disruptive and manipulative behavior that precipitated their confinement in the SMU thereby giving them an opportunity to return to the general population.") (internal quotations omitted), *aff'd by Bracey v. Sec'y Pennsylavnia Dept. of Corr.*, No. 14-4248, 2017 WL 1400458 (3d Cir. April 19, 2017) (unpublished memorandum disposition); *Dantzler v. Beard*, No. 05-1727, 2007 WL 5018184, at *3-*4 (W.D. Pa. Dec. 6, 2007) (rejecting inmate's contention that "behavior modification" techniques implicates a liberty interest); *Bollig v. Fiedler*, 863 F. Supp. 841, 848-49 (E.D. Wis. 1994) (finding no protectable liberty interest in requiring sex offender to participate in rehabilitative program that encourages inmates to accept responsibility for their crimes and seek treatment).

Next, the question is whether Plaintiff had a state-created liberty interest in refusing "unwanted and improper mental health treatment." Specifically, is there a genuine issue of material fact as to whether Plaintiff was deprived of a state-created liberty interest in the right to refuse "mental health treatment" while still benefitting from the privileges provided by the SDP? *See Sandin v. Conner*, 515 U.S. 472, 477-87 (1995).

Plaintiff alleges that refusing to participate in the "mental health treatment" component of the SDP would have resulted in indefinite placement in the SHU and a resulting permanent loss of the ability to earn good time credits. Even assuming that Plaintiff was subject to "mental health treatment," there is an absence of evidence that

1    Plaintiff would be disciplined or that his refusal would result in some atypical and

2    significant hardship from refusing to participate. *See Sandin*, 515 U.S. at 477-87, 484.

3    Plaintiff was already housed in the SHU for being validated as a gang member or

4    associate. The SDP was an alternate method of release from the SHU. Another method of

5    release was to debrief. Giurbino Decl., Ex. A at 56-59. Plaintiff concedes that if he did

6    not comply with the SDP, he would remain at Step 1. He has not provided any specific

7    evidence concerning the conditions of his confinement in the SDP or how his situation was

8    an atypical or significant hardship. Plaintiff's allegations and arguments regarding his

9    SDP placement are conclusory and, thus, insufficient to support his claims. Plaintiff has

10   not carried his burden to show that a genuine issue of material fact exists as to whether his

11   placement in the SDP differs in such degree or duration as compared with the "ordinary

12   incidents of prison life" to constitute protected liberty interests under the Due Process

13   Clause. *See Sandin*, 515 U.S. at 484. Thus, there is an absence of evidence that Plaintiff

14   was deprived of a state-created liberty interest that resulted in an atypical and significant

15   hardship.

16        Accordingly, the Court finds that there is no genuine issue of material fact that

17   Plaintiff suffered a deprivation of a liberty interest implicated either by the Due Process

18   Clause itself, or as created by a state statute or regulation.

19                  b.      Substantive due process

20        In his opposition, Plaintiff specifically raises for the first time a substantive due

21   process claim, alleging that Plaintiff had a substantive due process right not to be subjected

22   to mandatory behavior modification programs. Even assuming Plaintiff intended to raise a

23   substantive due process claim in his complaint, the Court finds that Plaintiff has not stated

24   a cognizable claim for relief.

25        Substantive due process refers to certain actions that the government may not

26   Case No. 15-cv-03950 NC (PR)
     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

27                                          11

28

engage in, no matter how many procedural safeguards it employs. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988). Due process protection in the substantive sense limits what the government may do in both its legislative and executive capacities. *See Lewis*, 523 U.S. at 846. "Only official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 952 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Lewis*, 523 U.S. at 846).

Substantive due process must be expanded only with the greatest care and its protection is primarily reserved for liberties deeply rooted in the nation's history and tradition, *see Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam); that is, it is ordinarily reserved for those rights that are "fundamental," *see Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994).

It is undisputed that there is a federally recognized liberty interest in the right to bodily integrity under the Fourteenth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977). However, *Ingraham* addressed the rights of schoolchildren to remain free from arbitrary physical punishment. *Id.* In *Cruzen v. Missouri*, the Supreme Court confirmed that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." 497 U.S. 261, 278 (1990). However, *Cruzen* specifically dealt with, and assumed for purposes of the case, that the Constitution "would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." *Id.* at 279. Other cases have found that there is a liberty interest in avoiding the unwanted administration of antipsychotic drugs, *see Washington v. Harper*, 494 U.S. 210, 221-22, 229 (1990) ("The forcible injection of medication into a

Case No. 15-cv-03950 NC (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

12

1    nonconsenting person's body represents a substantial interference with that person's

2    liberty"), and a liberty interest in the physical transfer to a mental hospital coupled with

3    forced medical treatment including drugs, *see Vitek*, 445 U.S. at 494.

4    Even if therapeutic components of SDP are considered "cognitive behavior

5    therapy," there is no evidence that such therapy equates to the type of "medical treatment"

6    or invasion into bodily integrity at issue in *Cruzen*, 497 U.S. at 278-79 (right to die case),

7    *Rochin v. California*, 342 U.S. 165, 172 (1952) ("Illegally breaking into the privacy of the

8    petitioner, the struggle to open his mouth and remove what was there, the forcible

9    extraction of his stomach's contents . . . is bound to offend even hardened sensibilities"),

10    or *Washington*, 494 U.S. at 229 (nonconsensual injection of medication). That is,

11    Plaintiff's allegations are not the type of actionable behavior that "shocks the conscience."

12    Here, Plaintiff's claim to be free from mandatory behavior modification programs

13    within the SDP is markedly different from those previously recognized rights. Further,

14    Plaintiff has not cited to, and this Court is not aware of, any authority that holds, either

15    directly or by analogy, that the Due Process Clause of the Fourteenth Amendment protects

16    such an interest. Therefore, this Court declines to recognize a substantive due process

17    right as alleged by Plaintiff.

18    Thus, to the extent Plaintiff intended to assert a substantive due process claim, that

19    claim is DISMISSED for failure to state a claim.

20    2.    Qualified Immunity

21    In the alternative, Defendants also argue that they are entitled to qualified

22    immunity. The defense of qualified immunity protects "government officials . . . from

23    liability for civil damages insofar as their conduct does not violate clearly established

24    statutory or constitutional rights of which a reasonable person would have known."

25    *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified

26    Case No. 15-cv-03950 NC (PR)
     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

27                                        13

28

immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (citations omitted). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* It is Plaintiff's burden to prove the existence of a "clearly established" right at the time of the challenged conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).

The Supreme Court has cautioned that courts should not define clearly established law at a high level of generality. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). Here, the question is whether the law was clearly established in 2013 that a prisoner had a liberty interest in refusing to participate in the rehabilitative programming portions, i.e., the "cognitive behavioral therapy" components, of the SDP.

As clearly established law, Plaintiff has cited to *Cruzan*, *Vitek*, and *Washington*. However, as stated above, these cases do not support Plaintiff's allegation because they do not clearly establish that Plaintiff had a right to refuse participation in the rehabilitative

programs or journaling component of the SDP. *Cruzan* involved the question of whether an incompetent non-prisoner had a liberty interest in refusing life-saving medical treatment, i.e., the artificial delivery of food and water, and posited the question of whether the Constitution granted a "right to die." 497 U.S. at 277-78. *Vitek* supported the idea that there was a general liberty interest in refusing psychiatric treatment when coupled with the determination that an inmate was mentally ill, and transferred to a mental hospital. 445 U.S. at 493-94. *Washington* recognized that prisoners have "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause." 494 U.S. at 221-22.

The Court has conducted a search of cases discussing whether a liberty interest is implicated when prison officials mandate a prisoner to comply with rehabilitative programming, such as self-directed journaling, counseling, therapy, etc., and has found no applicable Supreme Court or Ninth Circuit cases. In the absence of binding precedent, the Court may look to all available decisional law, including the law of other circuits and district courts. *See Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015) (only in absence of decisional authority by the Supreme Court or Ninth Circuit are other sources of decisional law, such as out-of-circuit cases, considered).

In fact, there are a handful of out-of-circuit cases that have found similar mandatory rehabilitative programs to be constitutional. *See, e.g.*, *Knowlin v. Heise*, No. 10-3288, 2011 WL 1625432, at **2-**3 (7th Cir. Apr. 29, 2011) (unpublished memorandum disposition) (concluding that inmate failed to demonstrate a deprivation of a protected liberty interest when prison required participation in substance abuse treatment program even though inmate was not classified as substance-dependent); *Bracey v. Beard*, No. 11-217, 2014 WL 4659639, at *8 (W.D. Pa. Sept. 17, 2014) (finding no implication of liberty interest in placement of non-mentally ill inmates into Special Modification Unit or forced behavior

Case No. 15-cv-03950 NC (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

15

modification program because "inmates are not forced to undergo any treatment but that the program merely attempts to . . . motivate them to modify the disruptive and manipulative behavior that precipitated their confinement in the SMU thereby giving them an opportunity to return to the general population.") (internal quotations omitted), *aff'd by Bracey v. Sec'y Pennsylavnia Dept. of Corr.*, No. 14-4248, 2017 WL 1400458 (3d Cir. April 19, 2017) (unpublished memorandum disposition); *Dantzler v. Beard*, No. 05-1727, 2007 WL 5018184, at *3-*4 (W.D. Pa. Dec. 6, 2007) (rejecting inmate's contention that "behavior modification" techniques implicates a liberty interest); *Bollig v. Fiedler*, 863 F. Supp. 841, 848-49 (E.D. Wis. 1994) (finding no protectable liberty interest in requiring sex offender to participate in rehabilitative program that encourages inmates to accept responsibility for their crimes and seek treatment).  On the other hand, the Court has not discovered any out-of-circuit cases concluding that a liberty interest is implicated when a prisoner is forced to undergo behavior modification as a component of a rehabilitative program.

In sum, because Plaintiff's right to due process was not clearly established in this situation, the Court concludes that reasonable officials in Defendants' positions would not have believed that the challenged portions of the SDP would be unlawful.  Defendants are entitled to qualified immunity on the due process claim.

### 3.    Unconstitutional Conditions Doctrine

Plaintiff alleges that Defendants have violated the unconstitutional conditions doctrine by "conditioning the granting of benefits on Plaintiff's waiver of his right to refuse mental health treatment, informed consent, and due process."  Compl. at 2.  Plaintiff does not discuss this claim any further in his complaint or his opposition.

The basic components of an unconstitutional conditions program consist of a "conditioned government benefit" and an "affected constitutional right."  Kathleen M.

Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1421-22 (1989). "The unconstitutional conditions doctrine says that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Bingham v. Holder*, 637 F.3d 1040, 1045 (9th Cir. 2011) (internal quotation marks and citation omitted). The Ninth Circuit has recognized that "even in a prison setting, the Constitution places some limits on a State's authority to offer discretionary benefits in exchange for a waiver of constitutional rights." *Vignolo v. Miller*, 120 F.3d 1075, 1078 (9th Cir. 1997).

Here, as discussed above, because Plaintiff has not shown a deprivation of a constitutional right, there is necessarily no evidence to support his claim under the unconstitutional conditions doctrine. In addition, there is an absence of evidence regarding, and Plaintiff does not specify, what "benefits" he was forced to give up.

Accordingly, Defendants are entitled to summary judgment on this claim.

4.    Mootness

The jurisdiction of federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). "[A] dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies'." *Alvarez v. Smith*, 558 U.S. 87, 93 (2009) (citations omitted). Mootness inquiries require courts to look to changing circumstances that arise after the complaint is filed. *ACLU v. Heller*, 471 F.3d 1010, 1016 (9th Cir. 2006). A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted due to subsequent developments. *See Flast v. Cohen*, 392 U.S. 83, 95

1   (1968). Where injunctive relief is involved, questions of mootness are determined in light

2   of the present circumstances. *See Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

3       Defendants argue that Plaintiff's request for injunctive relief is moot because

4   Plaintiff was released from the SDP during the course of this litigation, and in January

5   2016, Plaintiff was transferred to PBSP's Restricted Custody General Population Unit.

6   Ducart Decl. ¶ 7 and Ex. C. Plaintiff is not currently subject to SDP requirements. Thus,

7   argue Defendants, there is no longer a live controversy.

8       There are two narrow exceptions to the mootness doctrine. One exists where a

9   claim is "capable of repetition yet evading review." *Native Village of Noatak v.*

10  *Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994). A second exception to the mootness

11  doctrine is when there is voluntary cessation of the allegedly illegal conduct when there is

12  a reasonable expectation that the wrong will be repeated.[4] *See PUC v. FERC*, 100 F.3d at

13  1460.

14      Plaintiff argues that his request for injunctive relief is not moot because it falls

15  under the first exception: "capable of repetition yet evading review." Plaintiff asserts that

16  on September 6, 2016, he was placed into administrative segregation after being accused

17  of conspiring with other inmates to commit murder. Opp. at 19; Pl. Decl. (Dkt. No. 76), ¶

18  3. On November 17, 2016, Plaintiff was found guilty of this charge and sentenced to a

19  determinate SHU term to February 27, 2018, followed by two years in the SDP. Pl. Decl.

20  (Dkt. No. 76), ¶ 5. Plaintiff asserts that because it is certain he will be returned to the SDP,

21  his claim for injunctive relief falls within the exception of "capable of repetition yet

22

23  ───────────────

    [4] The voluntary cessation must have arisen because of the underlying litigation. *See PUC v.*
24  *FERC*, 100 F.3d at 1460. In addition, voluntary cessation does not make the case moot unless
    there is no reasonable expectation that the wrong will be repeated. *Id.* Defendants have not
25  argued that their voluntary cessation renders this case moot, and Plaintiff does not argue that his
    claim falls under this exception. Therefore, this exception is inapplicable.
26  Case No. 15-cv-03950 NC (PR)
    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
27                                          18

28

evading review."

However, this exception is limited to extraordinary circumstances where two elements are present: (1) the challenged action is of limited duration, too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. *Porter v. Jones*, 319 F.3d 483, 489-90 (9th Cir. 2003). In order to satisfy the first factor, the Ninth Circuit has stated that the controversy must be of *inherently* limited duration." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) (emphasis in original). "This is so because the 'capable of repetition, yet evading review' exception is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would always evade judicial review." *Id.* "Controversies that are not of inherently limited duration do not create exceptional situations justifying the rule's application, because, even if a particular controversy evades review, there is no risk that future repetitions of the controversy will necessarily evade review as well." *Id.* at 837 (internal quotation marks omitted). Accordingly, courts will not apply the exception where the party's own action or failure to act has rendered the action moot. *Cf. id.* (stating that a party may not "profit" from the exception where the party failed to seek and obtain "prompt relief"). Where such a circumstance exists, "the controversy must be resolved in a future action presenting a live dispute." *Id.*

The controversy presented in Plaintiff's case is not of an inherently limited duration. The Court notes that Plaintiff was initially placed into the SDP and Plaintiff learned of the requirement to participate in "cognitive behavioral therapy" on September 24, 2013. Compl. ¶ 16. Plaintiff did not file this lawsuit until nearly three years later on August 28, 2015, and as of February 2016, was no longer in the SDP. Ducart Decl. ¶ 11. This case does not present the type of "inherently transitory" claims that fall within this

narrow exception to the mootness doctrine. *See Bowen*, 752 F.3d at 837 (recognizing that the exception does not apply unless the controversy at hand "inherently precludes judicial review, not to situations where . . . [review is precluded as a] practical matter.") (quoting *Matter of Bunker Ltd. Partnership*, 820 F.2d 308, 311 (9th Cir. 1987).

As to Plaintiff's assertion that he will be forced to undergo the same challenged behavioral modification components of the SDP, Defendants assert that, due to a class action lawsuit in *Ashker v. Governor*, No. 09-7596 CW (N.D. Cal.), and subsequent settlement agreement, the SDP components have been modified. The plaintiffs in *Ashker* challenged CDCR's procedures for assigning inmates to the SHU and allege that those procedures violated the Fourteenth Amendment's guarantee of procedural due process. As part of the settlement agreement approved by the court, the CDCR agreed to modify the SDP. Specifically, the settlement agreement provides that the SDP will consist of 4 instead of 5 steps. *Id.*, Dkt. No. 486-3 at ¶ 19. In addition, the SDP will include mandatory and elective programming. *Id.* ¶ 21. While placement into the SDP is mandatory once an inmate is selected for such placement, if an inmate refuses to complete the required components at each step, his refusal will not result in retention or regression in the SDP. *Id.* ¶ 22. Rather, that inmate will be removed from the SDP and transferred to the Restrictive Custody General Population to the Step 3 privilege group. *Id.*

It is undisputed that the make-up and procedures of the SDP will be different when Plaintiff returns to the SDP in 2018. Thus, the specific facts on which Plaintiff's claim rest are unlikely to be repeated. When resolution of a controversy depends on facts that are unique or unlikely to be repeated, the action is not capable of repetition and is moot. *See PUC v. FERC*, 100 F.3d at 1460.

Accordingly, Plaintiff's claim for injunctive relief is moot, and it does not meet the elements to satisfy the exception to mootness that it is capable of repetition yet evades

review. Plaintiff's claim for injunctive relief is DENIED as moot.

  5.  State law claim

In Plaintiff's complaint, Plaintiff raised a claim that Defendants violated his right to informed consent under California law. Plaintiff's state law claim is dismissed under the authority of 28 U.S.C. § 1367(c)(3). *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (court may decline to exercise supplemental jurisdiction over related state-law claims under subsection (c)(3) once it has dismissed all claims over which it has original jurisdiction*); see also Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (although discretionary, claims under state law should be dismissed when associated federal claims are dismissed before trial). Plaintiff's state law claim is based on the same set of facts as his federal claims, which the Court has resolved above. Accordingly, the Court declines to exercise jurisdiction over the remaining state law claim, and will dismiss it without prejudice. *See Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996). Plaintiff may file his state law claim in state court.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. Plaintiff's state law claim is DISMISSED without prejudice. The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

DATED: _____June 19, 2017_____         _____

                                          NATHANAEL M. COUSINS
                                          United States Magistrate Judge

United States District Court
Northern District of California